**U.S. Equal Employment Opportunity Commission**
Newark Area Office
Two Gateway Center, Suite 1703
283-299 Market Street
Newark, New Jersey 07102
Edumin Corrales, Trial Attorney
(862) 338 – 9424

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PEARSON EDUCATION, INC.,<br><br>　　　　　Defendant. | Civil Action No.: 2:25-cv-12214<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title I of the American with Disabilities Act of 1990, as amended, ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to employees with visual impairments who have been adversely affected by these practices ("Aggrieved Individuals"). The United States Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant Pearson Education, Inc., ("Pearson" or "Defendant") has failed to provide employees with visual impairments equal access to employee benefits, performance, and leave information, and to required trainings as is enjoyed by employees without such impairments, in violation of the ADA, 42 U.S.C. § 12101, *et seq.*

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of New Jersey.

## PARTIES

3.  Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.  At all relevant times, Defendant Pearson Education, Inc. has been continuously doing business in the State of New Jersey, and the County of Hudson, and has continuously had at least 15 employees.

5.  At all relevant times, Pearson has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

6.  At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

**ADMINISTRATIVE PROCEDURES**

7. More than thirty days prior to the institution of this lawsuit, EEOC Charge No. 524-2023-00883 was filed with the Commission alleging violations of the ADA by Defendant.

8. On August 13, 2024, the Commission issued Pearson a Letter of Determination finding reasonable cause to believe that Defendant violated the ADA.

9. The Commission invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with Pearson to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. On April 28, 2025, the Commission issued to Defendant a Notice of Failure of Conciliation on the above-noted charge.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF CLAIMS**

14. Pearson Education, Inc. is an educational publishing and services company that produces textbooks, online courseware, and testing/assessment services that are used by K-12, post-secondary institutions, and professional licensing organizations throughout the United States. As Pearson provides products and services for entities that receive federal assistance, some of Pearson's products and services must comply with Section 504 of the Rehabilitation Act of 1973.

15. Pearson employs individuals who are blind or who have other visual impairments.

16. The Aggrieved Individuals are capable of performing the essential functions of their jobs with or without a reasonable accommodation.

17. The Aggrieved Individuals are qualified individuals with a disability under 42 U.S.C. §§ 12102 and 12111(8).

18. For example, the individual who filed Charge No. 524-2023-00883 ("Aggrieved Individual No. 1") has been employed by Pearson and is blind.

19. Aggrieved Individual No. 1's visual impairment substantially limits them in the major life activity of seeing and in the use of special sense organs, their eyes.

20. Aggrieved Individual No. 1 uses assistive technology, including screen reading software such as Job Access with Speech ("JAWS"), to read text that is displayed on a computer screen.

21. In April 2018, Defendant hired Aggrieved Individual No. 1 as a VUE Senior Quality Assurance Engineer for Blindness Technologies.

22. As a Senior Quality Assurance Engineer for Blindness Technologies, Aggrieved Individual No. 1's duties include evaluating and testing Pearson's assessment and courseware products to ensure they are accessible by people with visual impairments.

23. Aggrieved Individual No. 1's visual impairment substantially limits them in the major life activity of seeing and in the use of special sense organs, their eyes.

24. Aggrieved Individual No. 1 is capable of performing — and has performed — the essential functions of their job at Pearson, with or without reasonable accommodations.

25. Pearson contracts with several third-party vendors that provide online platforms and software which employees use to access their payroll information, employee and fringe benefits, track and input leave, and employee performance metrics.

26. These third-party vendors include, but are not limited to, Automatic Data Processing, Inc. ("ADP"), Fusion Oracle, and Mercer Health & Benefits, LLC ("Mercer"), which was partially acquired by Aptia Insurance Services Group, LLC in 2024 ("Aptia").

27. Pearson provides its employees access to employee benefits, leave, and employee performance through online platforms that are not fully accessible to employees who are blind or who have other visual impairments.

28. For example, since at least 2018, Aggrieved Individual No. 1 has not been able to access information relating to their employee benefits, leave, and employee performance using these online platforms because they cannot consistently be read by screen-reading software.

29. Since at least 2018, Pearson has been aware that Aggrieved Individual No. 1 and other employees with visual impairments cannot independently access their online benefits information and complete required trainings.

30. For example, during their employee onboarding process in 2018, Aggrieved Individual No. 1 could not independently elect their health insurance benefits, assign beneficiaries, or complete their IRS W-4 tax form through ADP, and had to receive assistance from Human Resources.

31. Sometime in March 2019, Aggrieved Individual No. 1 discovered that the W-4 form had automatically elected zero tax withholding, which resulted in a $10,000 tax bill.

32. In April 2019, Aggrieved Individual No. 1 and Jan McSorely, Vice President of Psychometrics and Testing Services, complained to Pearson about the tax form issue and noted that employees with visual impairments were encountering issues accessing the payroll, online benefits and performance tracking portals.

33. Sometime in 2020 or 2021, Pearson entered into a contract for health and benefits

management services with Mercer Health & Benefits, LLC, and in or about October 2021, Mercer rolled out a new online benefits portal.

34. Aggrieved Individual No. 1 could not view their employee benefits information, enroll for benefits, or submit receipts for medical expense reimbursements because Mercer's benefit portal was not accessible to individuals who use screen reading software.

35. In July 2022, Aggrieved Individual No. 1 discovered that Mercer accidentally enrolled them into a Flexible Savings Account, resulting in approximately $1,000 in out-of-pocket expenses. Mercer refused to fix the issue.

36. In August 2022, Aggrieved Individual No. 1 complained to Pearson management again that they continued to encounter issues with accessing their benefits information and that they believed Pearson was violating their civil rights.

37. In September 2022, Pearson met with Mercer to discuss the accessibility issues with the benefits portal. While Mercer's representative stated that its benefits portal would be accessible by late 2023, Mercer did not implement fixes that would make its portal accessible.

38. In April 2023, Pearson enacted a Technology Procurement Supplier Accessibility Policy that required Pearson to inform vendors that contract renewal would depend on the vendor's ability to meet accessibility requirements, including compliance with the latest version of the Web Content Accessibility Guidelines ("WCAG"), a well-known accessibility standard.

39. In or about October 2023, Pearson executed a "Partial Novation of the Master Services Agreement" with Mercer and Aptia Insurance Services Group, LLC, that transferred benefits administration responsibilities to Aptia, including the benefits portal.

40. During contract negotiations with Mercer and Aptia in or about August 2023, Pearson did not consider or raise the accessibility issues affecting the benefits portal as required

by its Technology Procurement Supplier Accessibility Policy.

41. To date, Aggrieved Individual No. 1 and other employees with visual impairments cannot independently access their benefits information.

42. Instead, Aggrieved Individual No. 1 and other employees with visual impairments rely on assistance from third parties, such managers or customer service representatives, to view their benefits information or make changes, which requires them to disclose sensitive personal information to third parties.

43. These barriers also require Aggrieved Individual No. 1 and other employees with visual impairments to spend substantially more of their personal time to complete simple tasks such as checking their benefits or making changes to their enrollment.

44. Aggrieved Individual No. 1 and other employees with visual impairments also cannot independently view their leave balances, input requests for leave, or their employee performance reviews because the Fusion Oracle portal is not accessible.

45. Instead, Aggrieved Individual No. 1 and other employees must ask managers to provide updates on their leave balances, track their time on a spreadsheet, and ask managers to input comments on their employee performance reviews.

46. In December 2022, Aggrieved Individual No. 1 lost 44 hours of unused paid leave time because they did not receive updates on their leave balance from management.

47. Since at least 2018, Aggrieved Individual No. 1 and other employees with visual impairments cannot complete required employee trainings because Pearson's training modules, which are developed internally, are not WCAG compliant or have interface and design flaws which make them incompatible with screen reading software.

48. As a result, Aggrieved Individual No. 1 and other employees with visual

impairments must spend their personal time to complete required trainings by using the assistance of a sighted person or receive assistance from managers to circumvent unnavigable content.

49. Upon information and belief, Defendant did not offer any modifications or accommodations that would have allowed Aggrieved Individual No. 1 and other employees with visual impairments to independently access their benefits and complete trainings, which could include JAWS scripting or other readily available technological fixes.

## COUNT I:
### *Violation of the ADA – Failure to Provide Reasonable Accommodation*

50. The Commission realleges and incorporates by reference the allegations set forth in Paragraphs 1-49, above.

51. Defendant engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(b)(5)(a) when it failed to provide the Aggrieved Individuals with accommodations that would allow them to independently access their employee benefits information and trainings.

52. Defendant had notice of the need of Aggrieved Individual No. 1 and employees with visual impairments for a reasonable accommodation to independently access their benefits information and trainings.

53. Reasonable accommodations, including the implementation of technological fixes, such as JAWS scripting, or requiring that third-party vendors provide accessible benefits portals would have effectively accommodated the Aggrieved Individuals by making benefits portals and trainings accessible to them.

54. Defendant refused to provide reasonable accommodations for the Aggrieved Individuals.

55. Defendant's refusal to make a reasonable accommodation for the Aggrieved

Individuals violated the ADA.

56. The failure to accommodate the Aggrieved Individuals resulted in pecuniary damages, deprived them of equal employment opportunities, and otherwise adversely affected their status as employees because of their disabilities.

57. The unlawful employment practices complained of above were intentional.

58. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of the Aggrieved Individuals' rights.

## COUNT II:
### *Violation of the ADA – Denial of Equal Access to the Terms, Conditions or Privileges of Employment*

59. The Commission realleges and incorporates by reference the allegations set forth in Paragraphs 1-49, above.

60. Defendant engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(a) by failing to provide the Aggrieved Individuals with equal access to terms, conditions, privileges, and benefits of their employment as enjoyed by persons without visual impairments, including access to employee benefits information and trainings.

61. Defendant's failure to provide equal access to the Aggrieved Individuals to their employee benefits information and employee trainings constitutes an adverse employment action with respect to the terms, conditions, privileges, and benefits of their employment.

62. The failure to provide the Aggrieved Individuals with equal access to terms, privileges, and conditions of employment resulted in pecuniary damages, deprived them of equal employment opportunities, and otherwise adversely affected their status as employees because of their disabilities.

63. The unlawful employment practices complained of above were intentional.

64. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of the Aggrieved Individuals' rights.

### COUNT III:

*Violation of the ADA – Participation in Contractual Arrangement that Subjects Employees to Discrimination on the Basis of Disability*

65. The Commission realleges and incorporates by reference the allegations set forth in Paragraphs 1-49, above.

66. Defendant engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(b)(2) by participating in a contractual or similar relationship with third-party vendors that has subjected the Aggrieved Individuals to discrimination prohibited by the ADA.

67. Defendant has contracted with third-party vendors, including ADP, Mercer (now Aptia), and Fusion Oracle, which provide fringe benefits administration and the online platforms which Defendant's employees use to access information regarding their benefits.

68. Defendant has been aware since at least 2018 that the online platforms provided by third-party vendors are not WCAG compliant or otherwise accessible to individuals with visual impairments.

69. In 2023, Defendant renewed its contract with Mercer (now Aptia) without requiring it to fix the accessibility issues encountered by employees with visual impairments who use the benefits portal.

70. Defendant's participation in contractual or similar relationships with third-party vendors that subject the Aggrieved Individuals to discrimination prohibited by the ADA resulted

in pecuniary damages, deprived them of equal employment opportunities, and otherwise adversely affected their status as employees because of their disabilities.

71. The unlawful employment practices complained of above were intentional.

72. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of the Aggrieved Individuals' rights.

## PRAYER FOR RELIEF

73. Wherefore the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from denying the Aggrieved Individuals with equal access to their employee benefits information and training as enjoyed by individuals without visual impairments;

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from failing to provide reasonable accommodations that permit employees with visual impairments to independently access their employment benefits information and training;

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

D. Order Defendant to make the Aggrieved Individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

E. Order Defendant to make the Aggrieved Individuals whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment

practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial;

F.   Order Defendant to pay the Aggrieved Individuals punitive damages for the malicious and/or reckless indifference described above, in amounts to be determined at trial;

G.   Grant such further relief as the Court deems necessary and proper to the public interest; and

H.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Dated: June 27, 2025

ANDREW ROGERS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, D.C., 20507


s/ Kimberly A. Cruz
_____
KIMBERLY A. CRUZ
Regional Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Telephone: (929) 506-5345
Kimberly.Cruz@eeoc.gov

*Edumin Corrales*
_____
EDUMIN CORRALES
Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Newark Area Office
Two Gateway Center, Suite 1703
283-299 Market Street
Newark, NJ 07102
Telephone: (862) 338-9424
Edumin.Corrales@eeoc.gov